IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILMA JEAN WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-cv-871-TFM |
| | ) | [wo] |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and Supplemental Security Income benefits under Title XVI of the Social Security Act, Wilma Jean Warren ("Warren" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court AFFIRMS the Commissioner's decision denying disability insurance benefits and supplemental security income benefits.

### I. NATURE OF THE CASE

Warren seeks judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits and supplemental security

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

assure that their income does not fall below the poverty line.³  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled.  20 C.F.R. §§ 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 2015 U.S. App. LEXIS 9640, 2015 WL 3605682 (11th Cir. June 10, 2015).  The ALJ determines:

(1)   Whether the claimant is currently engaged in substantial gainful activity;

(2)   Whether the claimant has a severe impairment or combination of impairments;

(3)   Whether the impairment meets or exceeds one of the impairments in the listings;

---

³ SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

  (4)  Whether the claimant can perform past relevant work; and

  (5)  Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

  The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

  To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert. *Id*. at 1239-40.

---

4  *See* 20 C.F.R. pt. 404 subpt. P, app. 2

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. BACKGROUND AND PROCEEDINGS

Warren brought a disability claim because of HIV, COPD, fatigue, depression, anxiety, polysubstance abuse, and pain in her hands, wrists, hips, legs and feet. (R. 16, 60, 76, 257). Following initial administrative denial of her claim, Warren requested a hearing before an administrative law judge ("ALJ") (R. 119). ALJ Paul W. Johnson ("the ALJ") convened an evidentiary hearing on December 10, 2013. (R. 47-83). Warren and her attorney appeared at the hearing. The ALJ received direct testimony from Warren and a Vocational Expert ("VE"). The remaining evidentiary record consisted of medical reports from treating sources and residual functional capacity assessments completed by a medical consultant who examined Warren and reviewed medical records upon request of Maryland Disability Determination Services.[5] The

---

[5] Stephen A. Hirsch, M.D., W. Hakkarinen, M.D., Charles Tucker, Ph.D, M. Jermany, M.D., A. Serpick, M.D., Varsha Vaidya, M.D., S. Boyer (R. 446-491, 514-520, 535-538). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a).

ALJ rendered an unfavorable verdict on March 17, 2014. (R. 19-38).  On September 23, 2015, the Appeals Council denied Warren's request for review (R. 1-3).  This Social Security Appeal was filed on November 20, 2015.  *See* Doc. 1, Complaint.

## V. Administrative Decision

Employing the five step process, the ALJ found that Warren has not engaged in substantial gainful activity since the alleged onset date (Step 1);[6] has severe impairments (Step 2); the impairments, considered individually and in combination, do meet or equal in severity any impairment set forth in the listings (Step 3); if Warren were to cease her substance abuse the remaining limitations would cause more than minimal impact on her ability to work therefore she would continue to have a severe impairment or combination of impairments; if Warrant were to cease her narcotics abuse she would not have an impairment or combination of impairments which would equal the listings; Warren cannot perform her past relevant work as a certified nurse assistant (Step 4); and a significant number of jobs are available in the national economy which Warren could perform with her residual functional capacity if Warren were to cease her substance abuse (Step 5).  (R. 36).

The ALJ utilized Vocational Expert (VE) testimony which indicates Warren can perform work available in the national economy with the limitations which beset Warren if Warren stopped abusing drugs. (R. 37).

## VI. Issues

Warren raises two issues on appeal:

(1) Whether the ALJ erred in finding that Plaintiff's HIV infection was a non-severe impairment

---

[6] The ALJ found the following "severe" impairments: polysubstance abuse (cocaine dependence, alcohol abuse, substance addiction), substance induced mood disorder, dysthymia, major depressive disorder, adjustment disorder, and antisocial personality disorder. (R. 21-22).

(2)   Whether the Commissioner erred in finding that "If the claimant stopped the substance use, Claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.820(d).

### VII. DISCUSSION AND ANALYSIS

**A.   Whether ALJ erred at Step 2 in failing to determine HIV infection was a severe impairment**

Warren alleges the ALJ erred when he did not find her HIV to be severe.  A severe impairment is one that significantly limits the claimant's ability to do basic work activities. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The Commissioner responds that substantial evidence supports the ALJ's conclusion that Plaintiff's HIV was not severe and even if it were an error, it would be harmless because the ALJ found other severe impairments at step two which progressed the ALJ's analysis to Step 3.

Any failure to make severe findings as to other ailments is harmless because a finding is all step 2 requires.  *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 949, 951-52 (11th Cir. 2014) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 824-25 (11th Cir. 2010).  The Court finds the ALJ satisfied his obligation at Step 2 and by finding a severe impairment, there is no error at Step 2.

However, as articulated by the *Heatly* holding, the ALJ must make specific and well-articulated findings in step 3 as to the effect of the combination of impairments.  *Heatly*, 382 Fed. Appx. at 825.  Thus, the Court will also look to whether the ALJ erred in Step 3 in his consideration of Warren's impairments or combination of impairments.  "The ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination."  *Id*. (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1991) (explaining that the ALJ must make "specific and well-articulated findings as to the effect of the combination of

impairments."). In this case, the ALJ satisfied that requirement.

It is undisputed the ALJ found Warren has the following impairments, polysubstance abuse (cocaine dependence, alcohol abuse, substance addiction), substance induced mood disorder, dysthymia, major depressive disorder, adjustment disorder, and antisocial personality disorder. (R. 22). The ALJ found Warren suffers from HIV infection, but the medical records indicate when Warren complies with her medical regimen the treatments effectively control her HIV infection. (R. 22). The Court concurs that the medical records and medical opinions amply demonstrate that Warren's HIV infection is not a severe impairment and responds quite well to treatment. (R. 446, 491). To the extent the medical treatments did not control her HIV infection it was because Warren simply chose not to take her medication. (R. 719, 763, 789). However, despite finding Warren's HIV infection as not severe, the ALJ properly considered Warren's HIV infection in combination with her other impairments. (R. 23). Warren does not challenge the findings vis a vis her HIV infection in combination with her other impairments. The Court agrees with the ALJ on both prongs – that is the finding that Warren's HIV infection is a non-severe impairment and her HIV infection in combination with her remaining impairments are not disabling.

**B.     Whether the Commissioner erred in finding that if the claimant stopped the substance use, Claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.820(d)).**

In a nutshell, Warren argues the ALJ gave too great weight to records from CrossBridge Mental Hospital in 2013 to conclude Warren would not meet the listing if she refrained from drug abuse. Warren was admitted to the CrossBridge Psychiatric Unit in August 2013 where she remained an inpatient for approximately 10 days. (R. 763). Assuming arguendo, the ALJ did give too great weight to a short period of forced sobriety, the record is still replete with other

weighty evidence that Warren would not meet the listings if she quit abusing drugs.

In January 2010, Stephen A. Hirsch, MD examined Warren. Dr. Hirsch noted Warren told Dr. Hirsch that she went cold turkey in September, 2009 and quit abusing drugs. (R. 449). Generally, Dr. Hirsch found Warren was oriented to time, place and person, that Warren can follow simple instructions and some more complex instructions. (R. 451). Dr. Hirsch concluded Warren had mild restrictions in daily living activities. In February 2010, the Commissioner had Charles Tucker, Ph.D review the treatment records. Dr. Tucker found Plaintiff only had mild restrictions in daily living activities. (R. 26, 482, 484). In June 2011, Varsha Vaidya, completed a consultative psychological examination of Warren and concluded Warren did not meet the listing. (R. 27, 514-519). In July 2011, S. Boyer, Ph.D., a State Agency consulting psychologist examined Warren. (R. 537). Dr. Boyer concluded, based on a variety of medical records and reports that Warren did not meet the listing and that Warren had only mild impairments in daily living activities.

The ALJ determined that Plaintiff's impairments met some listings. But, as legally required, the ALJ then considered the sequential evaluation steps as if Plaintiff stopped her substance abuse. (R. 25-38). Specifically, if the ALJ finds that substance abuse is involved, the ALJ "must determine whether [Plaintiff's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). The key factor examined in this inquiry is whether the Plaintiff would still be found disabled if she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). Therefore, the ALJ must evaluate which of the claimant's physical and mental limitations that supported the original disability determination would remain absent drug or alcohol use. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If a claimant would no longer be disabled if she stopped using

drugs or alcohol, then the claimant's substance abuse is considered to be a "contributing factor material to the determination of [her] disability," and she has therefore failed to meet her burden and prove that she is disabled.  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

The ALJ determined that without the substance abuse, Warren's remaining impairments would remain severe, but would not individually or in combination meet or equal a listing.  (R. 25).  The ALJ then found that she would have the RFC to perform the full range of work at all exertional levels but with the following nonexertional limitations: perform simple, routine, and repetitive tasks; maintain attention and concentration to perform such tasks for two-hour increments during the workday; and she can have casual contact with others in the work setting.  (R. 31).  As a result of that RFC determination, the ALJ found she would be unable to perform her past work, but there were a significant number of jobs in the national economy that she could perform.  (R. 36-37, R. 76-78).  In short, if Plaintiff stopped her substance abuse, she would not be disabled.

The Court concludes the ALJ properly considered and cited several other sources than the brief period of sobriety beyond Warren's treatment at Crossbridge and thus concluded Warren does not meet the listing.  It is not the role of the court to reweigh the evidence but to examine the evidence to conclude whether there was evidence to support the Commissioner's decision. *Chater*, 84 F.3d at 1400; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)) ("It is not for this court to 'decide the facts anew, make credibility determinations, or re-weigh the evidence.'").

The burden ultimately rests with Warren to demonstrate her disability.  *Doughty v. Apfel*, 245 F.3d 1274, 1276 (11th Cir. 2001).  The Court concludes Warren has not met her burden and

other weighty evidence was before the ALJ to conclude substantial evidence supports the Commissioner's decision that Warren is not disabled under the Act and its attendant regulations.

## VIII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court concludes that the ALJ's non-disability determination and denial of benefits is supported by substantial evidence and no legal error was committed.  It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED.  A separate judgment is entered herewith.

DONE this 23rd day of February, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE